UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD CAGE,

                Petitioner,               Case Number 08-13104
                                           Honorable David M. Lawson

v.

LLOYD RAPELJE,

                Respondent.

_____/

**OPINION AND ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS, MOTIONS FOR EVIDENTIARY HEARING AND TO REMAND, AND PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

Petitioner Harold Winfield Cage, presently confined at the Saginaw Correctional Facility in Freeland, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted following a jury trial in the Saginaw County Circuit Court of breaking and entering a barn with intent to commit a felony therein, Mich. Comp. Laws § 750.110, possession of burglar's tools, Mich. Comp. Laws § 750.116, and resisting and obstructing a police officer, Mich. Comp. Laws § 750.81(d)(1). He was sentenced as a fourth felony habitual offender to concurrent prison sentences of six to twenty years in prison on each count, although the prison term for resisting and obstructing a police officer was later amended to six to fifteen years. The petitioner alleges that he was denied his rights to self-representation and the effective assistance of counsel, and he was deprived of a fair trial because of prosecutorial misconduct. The respondent has filed an answer, asserting that the petitioner's claims are procedurally defaulted and lack merit. The petitioner asked the Court to stay this case so he could return to state court to raise post-judgment issues. The Court granted the request, and when the petitioner revived the present case in this Court he filed an amended petition and motions for an evidentiary hearing and for summary

judgment.  He subsequently filed another motion to remand and for an evidentiary hearing, which

repeats the allegations in his prior motions and the amended petition. The Court has reviewed all the

filings and determines that an evidentiary hearing is not necessary to adjudicate the petitioner's

claims.  The Court also finds that the claims lack merit.  Therefore the petitioner's motions and the

amended petition will be denied.

I.

The Michigan Court of Appeals aptly summarized the facts of the case as follows:

> Defendant was seen trespassing inside a pole barn by neighbors of the pole barn's
> owner.  After chasing defendant off the property, the neighbors locked up the barn
> and left to report the incident to the owner.  When the neighbors and the barn owner
> returned soon thereafter, they found that a lock had been cut off one of the barn doors
> and that there were items missing from inside the barn.  Defendant was spotted in a
> field behind the barn and took off running after one of the neighbors yelled. Bolt
> cutters were found where defendant had been standing, as well as items taken from
> the barn.  After the police arrived, defendant was again spotted in the area.  The
> police ran after defendant and apprehended him.  Defendant was taken to the hospital
> when, after he was arrested, he complained of dizziness.  Defendant then left the
> hospital after he was treated.  Defendant was arrested again about five days later.

*People v. Cage,* No. 273645, 2008 WL 681151, at *1 (Mich. Ct. App. Mar. 13, 2008).

The petitioner's relationship with his court-appointed attorneys was stormy.  Two were

allowed to withdraw and he proceeded to trial with a third.  The jury found the petitioner guilty of

all three charges.  The petitioner was represented by yet another lawyer on direct appeal, who filed

a brief raising the following issues: prosecutorial misconduct when the prosecutor revealed the

petitioner's parole status to the jury, denial of due process when the petitioner was not afforded a

pretrial competency hearing, and errors under the state's sentencing laws.  The petitioner filed a

supplemental brief *pro se* contending that he was denied the effective assistance of counsel and a

fair trial when the prosecutor suppressed certain evidence and he was not allowed to represent

-2-

himself.  He asked the appellate court to remand the case for a hearing on his assistance of counsel claim.  That court denied the request and affirmed the conviction.  *Ibid.*  The state supreme court denied leave to appeal.  *People v. Cage*, 481 Mich. 916, 750 N.W.2d 199 (2008).

On July 18, 2008, the petitioner filed a petition for a writ of habeas corpus in this Court in which he asserted nine claims for relief.  The petitioner asserted a tenth claim for relief in a supplemental pleading filed on October 20, 2008.  Some of the claims had not been presented to the Michigan appellate courts on direct review.  On November 7, 2008, the petitioner filed a post-conviction motion for relief from judgment in the state trial court  under Michigan Court Rule 6.500 *et seq.*  On November 20, 2008, this Court granted the petitioner's motion to hold the petition in abeyance, stayed the proceedings pending the completion of the petitioner's state post-conviction proceedings, and administratively closed the case.

On October 1, 2009, the petitioner filed a motion to reinstate his case, in which he indicated that although he had filed a post-conviction motion in the state trial court, he wished to abandon his unexhausted claims and to proceed with an amended petition that contained only the claims that he had already exhausted on direct appeal or post-conviction proceedings.  On October 15, 2009, this Court granted the petitioner's motion to reinstate the case and for the petitioner to proceed on the amended petition.  The petitioner seeks habeas relief on the following claims:

I.   Did the state courts identify the correct governing federal standard but applied their decision erroneously and used [a] misapplication of Supreme Court precedent by stating that petitioner was not denied self-representation by the trial court?

II.  Did the complete denial of counsel during those critical pretrial preparation of trial have an adverse effect on petitioner's Sixth Amendment right to counsel as clearly established by Supreme Court precedent which resulted in a jurisdictional defect?

III.    Did the state court abuse its discretion by its failure to inquire into self-representation and to conduct an inquiry mandated by M.C.R. 6.005(D), Michigan Constitution, Amendment Thirteen, MCL 763.1, MSA 28.854 and the United States Constitution Sixth Amendment and apply the governing federal legal standard?

IV.    Did the state court abuse its discretion and erroneously and unreasonably apply the wrong standard of review to petitioner's claim of prosecutor misconduct by violating the trial court's orders not to mention petitioner's parole status, along with other improper comments, mislead the jury, made bias comments and allowed perjury committed on the trial court's record contrary to Supreme Court precedent?

V.    Did the state court apply the wrong standard of review to petitioner's claim of a miscarriage of justice which denied petitioner's Sixth Amendment right to effective assistance of counsel when trial attorney['s] egregious and deficient performance prevented petitioner from proving actual innocence contrary to the federal legal standard?

VI.    Did the state court abuse its discretion by a misapplication of the federal governing legal standard by its failure to apply the correct standard of review to petitioner's claim of ineffective assistance of counsel by allowing trial attorney's fraudulent [sic] and misrepresentation to continued [sic] d[e]spite repeated requests by petitioner of an alleged conspiracy?

Am. Pet. at 2-3.  The respondent filed an answer contending that none of these claims justifies habeas relief.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

-4-

Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect

-5-

application of federal law.  Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review.  In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt."  *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v.*

-6-

*Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

In his first and third claims, the petitioner contends that he was denied his Sixth Amendment right to represent himself at trial, and the trial court erred by failing to conduct an inquiry with the petitioner required by Michigan Court Rule 6.005(D) to determine whether the petitioner wished to represent himself in his criminal case.

The Michigan Court of Appeals rejected the petitioner's claim, stating:

> Defendant next claims that he was denied his constitutionally protected right to represent himself at trial.  We disagree.  Defendant never properly requested to represent himself at trial.  Defendant did make a somewhat equivocal request to represent himself in one of dozens of letters to the trial court, but this was only after the trial court had already responded to an earlier correspondence, telling defendant that he had "already been advised on a number of occasions that it is improper for a party to unilaterally contact the court," and advising him that he had to "contact [his] attorney so that these issues may properly be brought before the court." Further, defendant had ample opportunity while before the court to request self-representation, but he never did so.  Therefore, because there was no proper, unequivocal request by defendant to represent himself, the trial court did not deny defendant his right to self-representation.

*People v. Cage,* 2008 WL 681151, at *5 (internal citations and footnote omitted).

The Sixth Amendment grants a criminal defendant the right to represent himself in criminal proceedings.  *Faretta v. California*, 422 U.S. 806, 834-35 (1975); *United States v. Jones*, 489 F.3d 243, 248 (6th Cir. 2007).  To trigger this right, however, two conditions must be satisfied.  First, the accused must "knowingly and intelligently" waive the right to counsel after having been apprised of "the dangers and disadvantages of self-representation."  *Faretta*, 422 U.S. at 835.  Second, a defendant's request for self-representation must be made clearly and unequivocally.  *Raulerson v.*

-7-

*Wainwright*, 469 U.S. 966, 969-70 (1984); *United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1995). The right to self-representation is "waived if it is not timely and unequivocally asserted." *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). The right to self-representation also may be waived through conduct that indicates that the defendant is vacillating on the issue or has abandoned his request altogether. *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000). Therefore, although a defendant has the right to represent himself in criminal proceedings, "the right to self-representation is not absolute." *Martinez v. Court of App. of Cal.*, 528 U.S. 152, 161 (2000).

In making a decision to permit self-representation, the trial court has an obligation to assess the defendant's competence as well. The defendant's level of competence is required to be higher than merely being competent to stand trial. *Indiana v. Edwards*, 554 U.S. 164, 172 (2008).

In the present case, the petitioner sent three different letters and a *pro se* motion to the trial court in which he mentioned a desire to represent himself. In each of these letters, however, his request was couched in terms of representing himself with the assistance of "standby counsel." In a letter sent to the circuit court judge on March 3, 2006, the petitioner indicated that he wanted his lawyer "to file a motion for an evidential (sic) hearing and a motion for self-representation but to use his services as a stand-in attorney." Later in that letter, the petitioner mentioned that he was being charged with three different offenses, which required significant time, investigation, and research "which must be an overload for just one attorney." Ptnr.'s Exhibit 39 [dkt. # 42]. The petitioner suggested that the court appoint three different attorneys for each of his cases. In a letter the petitioner sent both to the county chief judge and the trial judge on June 12, 2006, the petitioner again mentioned his right to represent himself, "with supporting role with stand[-]by attorney to assist that all motions filed by defendant be the primary source of choice by this Honorable Court."

-8-

Ptnr.'s Exhibit 58, 59 [dkt. # 42].  The petitioner sent a duplicate copy of this letter to yet another county court judge.  On June 22, 2006, the petitioner filed a motion for removal of counsel and dismissal of the judge.  In that motion, the petitioner complained at great length about the representation that he had received from all three of his lawyers, including his then-current lawyer George C. Bush.  At the conclusion of the motion, the defendant again asked to "exercise his constitutional rights to represent himself with aid of standby attorney to assist in his defense." Ptnr.'s Exhibit 60 [dkt. #42].

At a hearing conducted on July 10, 2006, the trial judge, Judge Fred Borchard, acknowledged that the petitioner had filed a number of letters and motions with the court.  Judge Borchard noted that the petitioner had been sent for a forensic examination as to the issue of his mental competency, to which the petitioner replied that the examination had been conducted that Wednesday.  The petitioner's then current lawyer, George C. Bush, said that he had spoken with the doctor from the Center for Forensic Psychiatry who was awaiting some additional information before she prepared her report.  The petitioner then expressed his dissatisfaction with his current attorney, as well as one of his previous attorneys, Steven Snyder.  The petitioner accused Mr. Bush of giving confidential information to Mr. Snyder for the latter to use in responding to a complaint the petitioner had filed against him with the Michigan Attorney Grievance Commission.  The petitioner told Judge Borchard that he had filed a lawsuit against Mr. Snyder.  Mr. Bush informed the court that the petitioner also had filed an Attorney Grievance Commission complaint and a civil rights lawsuit against him.

The petitioner then complained that Mr. Bush had visited him in jail only one time since he had been appointed as his (third) replacement counsel.  The petitioner argued that his attorney had refused to respond to his letters.  After the court informed the petitioner that Mr. Bush was one of

-9-

the "most competent criminal lawyers in the Saginaw County area," Hr'g Tr., July 10, 2006, at 9,

the following exchange occurred:

> MR. BUSH: I'm — I'm awaiting the outcome of his competency exam. Mr. Cage, what he wants to do is — apparently he wants to have a lawyer, but at the same time he wants to represent himself. He wants a lawyer to just file pleadings that he prepares in pro per, which are — lack merit. They're counterproductive. And he's either going to have to — if he's found to be competent, then he's got a decision to make, whether he wants a lawyer or not.

> THE DEFENDANT: I started filing motions, sir — excuse me. I started filing motions because he won't come and see me. That's why I— I — I did nothing until he refused to come and see me. That's when I started. When I had to put things in my own hands because I couldn't depend on him to come and visit me, I said, I'm going to have to do this myself.

> THE COURT: All right.

> THE DEFENDANT: If he come to see me, we wouldn't have had this problem.

> MR. BUSH: I think both Heather Gust and Steven Snyder can attest to the fact that the same things happened with them that's happened to —

> THE COURT: The Court.

> MR. BUSH: — my predecessors.

> THE COURT: The Court is going to deny the request to relieve Mr. Bush and also deny the request for taking myself off of the case.

> THE DEFENDANT: I hope so.

Hr'g Tr., July 10, 2006, at 9-10.

Significantly, at this hearing, the petitioner never asked the trial court that he be permitted to represent himself at trial, nor did he ever dispute his lawyer's assertion that the petitioner "wants to have a lawyer, but at the same time he wants to represent himself." The trial court record fairly supports the Michigan Court of Appeals's determination that the petitioner never clearly and

-10-

unequivocally invoked his right to self-representation.  In all of his letters and in his motion to the court, the petitioner likewise asked to represent himself, but with the assistance of counsel.

The Sixth Circuit has plainly stated that a defendant in a criminal case does not have a constitutional right to hybrid representation.  *United States v. Cromer*, 389 F.3d 662, 681 & n.12 (6th Cir. 2004) ("It is well settled that there is no constitutional right to hybrid representation." (citing *United States v. Mosley*, 810 F.2d 93, 97-98 (6th Cir. 1987))); *United States v. Green*, 388 F. 3d 918, 922 (6th Cir. 2004).  In *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984), the Supreme Court stated that "*Faretta* does not require a trial judge to permit 'hybrid' representation" and that "[a] defendant does not have a constitutional right to choreograph special appearances by counsel."

The petitioner's requests to the trial court fall squarely within that characterization.  The petitioner never asked the court to jettison his lawyer altogether, and he never plainly stated that he was content to go it alone.  In fact, at the July 10 hearing, the petitioner stated that although he had filed some motions because his attorney had not visited him when he wanted, if his attorney had visited him they would not have problems.  And when the court denied the request to have Mr. Bush removed from the case, the petitioner responded, "I hope so."  Hr'g Tr., July 10, 2006, at 10.  "Because the assertion of the right to self-representation necessarily involves a waiver of the constitutional right to counsel, and given the importance of the right to counsel, we think the wisest course is to require a clear and unequivocal assertion of a defendant's right to self-representation before his right to counsel may be deemed waived." *Cromer,* 389 F.3d at 682-83.  The record contains no clear and unequivocal invocation by the petitioner of his right to represent himself.  The

state courts' conclusion that there was no constitutional violation of that right reasonably applies Supreme Court precedent.

The petitioner's claim also is defeated by the fact that he continued to allow counsel to represent him at his trial and sentencing without making any subsequent demands to represent himself. "Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *McKaskle*, 465 U.S. at 183.

Finally, the petitioner argues that the trial court violated the provisions of Michigan Court Rule 6.005(D), which establishes a procedure for the waiver of the right to counsel. The respondent argues that review of that claim is barred because the petitioner did not exhaust it in the state courts. No matter. The petitioner raised the argument in his motion for relief from judgment, and procedural default is not a jurisdictional bar to review of the merits of an issue. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (*citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The petitioner's argument will not support federal habeas relief because "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The petitioner is not entitled to a writ of habeas corpus on his first or third claims.

B.

The Court will address the petitioner's ineffective assistance on counsel claims together. Those are set forth in claims two, five, and six of the amended petition. The governing decision, of course, is *Strickland v. Washington,* 466 U.S. 668 (1984), in which the Supreme Court established a two-pronged test for determining if a criminal defendant was deprived of the effective assistance of counsel guaranteed by the Sixth Amendment. First, the petitioner must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. A habeas petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. Second, the petitioner must show that counsel's deficient performance prejudiced him. Prejudice is established by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687. He must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

On habeas review, deference to the state courts' conclusions is required: "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, ---, 129 S.Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Additionally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

-13-

The petitioner contends that he was deprived of the effective assistance of counsel because his third and final trial attorney, George C. Bush, was acting under a conflict of interest because he gave privileged information to the petitioner's second attorney, Steven Snyder, which Snyder used in responding to the Bar grievance complaint the petitioner filed against him. The petitioner also appears to argue that Mr. Bush was laboring under a conflict of interest because the petitioner had filed a civil rights lawsuit against him in federal court, although Bush said his only knowledge of that lawsuit came from the petitioner himself. The petitioner contends that these conflicts of interest amount to *per se* violations of his Sixth Amendment right to counsel and he does not need to establish prejudice to obtain habeas relief.

The Supreme Court has recognized that "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." *Strickland,* 466 U.S. at 692. The Court also identified one type of ineffective-assistance-of-counsel claim that warranted a "similar, though more limited, presumption of prejudice," namely cases involving an actual conflict of interest that adversely affects counsel's performance. *Ibid.* (referencing *Cuyler v. Sullivan,* 446 U.S. 335, 348-49 (1980) (holding that to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant who fails to object at trial must demonstrate an actual conflict of interest that adversely affected his attorney's performance)).

That line of authority, however, does not relieve the petitioner of the obligation to show prejudice in this case. The rule that proof of prejudice is excused when the lawyer is burdened by a conflict of interest has been limited to cases where the conflict arises from multiple representation. *Mickens v. Taylor,* 535 U.S. 162, 172-74 (2002). In *Mickens*, the Court refused to extend the rule

-14-

beyond that factual circumstance, stating that although the *Sullivan* rule had been applied "unblinkingly" to various kinds of conflicts of interest that did not involve multiple representation, *Sullivan* "does not clearly establish, or indeed even support, such expansive application." *Id.* at 175. The Court further reasoned that *Sullivan* and *Holloway v. Arkansas*, 435 U.S. 475 (1978), "stressed the high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." *Ibid.* However, the Court believed that "[n]ot all attorney conflicts present comparable difficulties" and concluded that it remained an "open question" whether *Sullivan* should be extended to cases other than multiple representation. *Id.* at 176.

After *Mickens*, the Sixth Circuit has been reluctant to apply the *Sullivan* rule to conflicts of interest that do not arise from multiple representation. In *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002), the court held that a habeas petitioner was not relieved of the requirement of showing prejudice under *Sullivan* for an ineffective assistance of counsel claim based a conflict of interest that arose from other than multiple representation. Other cases have come to the same conclusion. *See Harrison v. Motley*, 478 F.3d 750, 756-57 (6th Cir. 2007) (holding that neither *Sullivan* nor *Holloway* applied to the petitioner's claim that his lawyers had a conflict of interest in representing him based on their fears of criminal prosecution and malpractice for witness tampering); *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006) ("This Court has consistently held that, for Section 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies."); *Whiting v. Burt*, 395 F.3d 602, 619 (6th Cir. 2005) (finding the presumed prejudice standard inapplicable to an attorney's alleged conflict from representing the petitioner at trial and on appeal); *Moss v. United States*, 323 F.3d 445, 473 n.25 (6th Cir. 2003) ("As we have discussed,

-15-

*supra,* the *Mickens* rationale compels our strong hesitation to apply *Sullivan* to conflicts of interest cases arising outside of the joint representation context.").  In this case, expanding the presumed prejudice standard of *Cuyler v. Sullivan* "beyond its present borders of multiple concurrent representation would result in the creation of a new rule of law — one that clearly has not been dictated by prior Supreme Court precedent." *Whiting*, 395 F.3d at 619-20.

In the present case, the petitioner's conflict of interest does not result from multiple concurrent representation of joint defendants at the same trial.  The presumed prejudice rule of *Cuyler v. Sullivan* is inapplicable to the petitioner's conflict of interest claim.  Instead, the proper standard is the *Strickland* standard, in which the petitioner must demonstrate that he was actually prejudiced by counsel's alleged conflict of interest.

The petitioner offers one more reason why he should not have to show prejudice: that he was constructively denied the assistance of counsel altogether.  That theory finds support in the case law.  *See United States v. Cronic*, 466 U.S. 648, 656 (1984).  Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel.  *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002) (quoting *Cronic*, 466 U.S. at 659).  But for the *Cronic* rule to apply, the attorney's failure to test the prosecutor's case "must be complete."  *Bell v. Cone*, 535 U.S. 685, 697 (2002); *see also Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007) (holding that the *Cronic* presumption "applies only where defense counsel *completely or entirely* fails to oppose the prosecution throughout the guilt or penalty phase *as a whole*" (citing *Bell*, 535 U.S. at 697)).

-16-

The petitioner's trial attorney hardly disengaged.  Instead, he actively represented the petitioner at his trial.  Defense counsel filed pretrial motions, participated in the voir dire of the jury, made an opening statement, cross-examined the prosecution witnesses, moved for a directed verdict, called the petitioner to testify, moved for a mistrial, and made a closing argument.  A presumption of prejudice under *Cronic* therefore does not apply and petitioner must show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief.

Turning now to trial counsel's actual performance, the petitioner argues that Mr. Bush was ineffective by failing to recall witness Robert Perry for rebuttal testimony after his son Brandon Perry had allegedly committed perjury at trial by testifying that he had remained outdoors to witness the petitioner trespassing near the barn.  As discussed in detail below, the petitioner maintains that Brandon Perry had, in fact, gone into the house and had not witnessed the petitioner's conduct.  The petitioner, however, acknowledges in his petition that Robert Perry had given that very testimony on direct examination, and that Mr. Bush had elicited testimony from both Robert Perry on cross-examination that Brandon had gone into the house and had not accompanied his father over to the barn.

Trial counsel's decision not to recall Robert Perry as a rebuttal witness was a matter of sound trial strategy that fell within professional norms.  The jury had already heard testimony from Robert Perry on direct and cross-examination that his son Brandon Perry had gone into the house and had not accompanied him over to the barn where the break-in had taken place.  Counsel could safely assume that the testimony was still fresh in the jurors' minds.  *See Bell*, 535 U.S. at 698-99 (concluding that trial counsel in a death penalty case was not ineffective by failing at the penalty

phase to recall medical experts who had testified during the guilt phase of the habeas petitioner's murder trial); *see also Payne v. Bell*, 418 F.3d 644, 667 (6th Cir. 2005).

The petitioner also complains that counsel was ineffective by failing to visit with him more than one time before trial. In many cases, a single jail visit by defense counsel before a case goes to trial would raise eyebrows. But not this one. Mr. Bush was the petitioner's third attorney. In other filings in this case, the petitioner acknowledged that his first two attorneys visited and consulted with him during the pre-trial stage. It also is clear that Mr. Bush had contact with those lawyers. When a case is headed for trial, multiple visits are preferred. But the petitioner has not offered any reason that would have necessitated such visits. Moreover, trial counsel's failure to visit the petitioner more than once before trial did not cause any prejudice; the petitioner has not offered any arguments to show how additional consultation with his lawyer could have altered the outcome of the trial. *See Bowling v. Parker,* 344 F.3d 487, 506 (6th Cir. 2003) (holding that trial counsels' failure to consult with defendant in capital murder case did not prejudice defendant, even where the attorneys allegedly met with defendant for less than one hour in preparing the defense, because the defendant did not show how additional consultation with his attorneys could have altered outcome of trial).

The petitioner also argues that counsel was ineffective by failing to call alibi witnesses at trial. The Michigan Court of Appeals rejected this claim because the petitioner never indicated who would have acted as an alibi witness on his behalf, nor did he describe the nature of any proposed alibi testimony. *People v. Cage*, 2008 WL 681151, at *4. The petitioner contends that the court of appeals erred in rejecting his claim on that basis and contends that he presented the names of his proposed alibi witnesses and their proposed testimony in his supplemental *pro se* brief on appeal.

-18-

In the motion to remand and supplemental brief on appeal the petitioner filed in the Michigan Court of Appeals, *see* dkt. #46-15, he mentioned the names of several witnesses that he contends should have been called on his behalf. However, the petitioner did not supply any affidavits from those witnesses in the state courts or this Court. He has not documented their proposed testimony or their willingness to testify. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Because the petitioner failed to present any evidence to the state courts in support of his ineffective assistance of claim, the petitioner is not entitled to an evidentiary hearing on that claim in this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). The petitioner has not offered any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the witnesses would have said. Moreover, there is no evidence that the petitioner ever discussed a potential alibi with Mr. Bush. In the absence of such proof, the petitioner is unable to establish that he was prejudiced by counsel's failure to call witnesses at trial. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Moreover, the only help the petitioner could have expected from alibi witnesses was on the burglary charge. An alibi defense could not possibly have helped him on the resisting and obstructing a police officer or possession of burglary tools charges. Even on the burglary charge, the court of appeals stated there was abundant evidence that the petitioner was in the area at the time of the crime, and the petitioner acknowledges that the alibi testimony would not have been conclusive. Br. in Support of Mot. to Remand [dkt. #46-14] at 7. Defense counsel's failure to present a proposed alibi witness whose testimony would not have led to a defendant's acquittal does

-19-

not amount to the ineffective assistance of counsel. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004).

Finally, the petitioner contends he was deprived of the effective assistance of counsel because Mr. Bush conspired with former trial counsel Steven Snyder and the prosecutor to deny him a fair trial. The Michigan Court of Appeals rejected this claim, finding that there was no evidence to support the petitioner's allegation. *People v. Cage*, 2008 WL 681151, at *4. So it is in this Court. The petitioner's own unsupported conclusions will not justify issuance of a writ of habeas corpus. *See Workman*, 178 F.3d at 771.

The petitioner has failed to show that he was denied the effective assistance of trial counsel. He is not entitled to habeas relief on that claim.

## C.

In his fourth claim, the petitioner alleges that he was denied a fair trial because of prosecutorial misconduct when the state prosecutor introduced perjured testimony, mentioned that the petitioner was on parole when he was arrested by the police, suppressed evidence, and made an improper argument to the jury. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender*, 376 F.3d at 528 (*citing Bowling*, 344 F.3d at 512). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious that it rendered the trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was

-20-

fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (*quoting Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (*quoting Donnelly*, 416 U.S. at 645).

The petitioner contends that the prosecutor knowingly introduced perjured testimony when Brandon Perry testified falsely that he remained outdoors to witness the petitioner at or near the crime scene. The petitioner points out that Brandon's father, Robert Perry, had testified at the preliminary examination and at trial that his son had gone into the house and had not accompanied his father over to the barn.

A prosecutor who deliberately introduces false testimony can undermine the fairness of a criminal trial; such practice "is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972); *see also Anderson v. Jackson*, 567 F. Supp. 2d 973, 981 (E.D. Mich. 2008). There is also a denial of due process when the prosecutor allows false testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted).

To prevail on a claim that a conviction was obtained by perjured testimony, the petitioner must show that the statements were actually false, the statements were material, and the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). A habeas petitioner also must show that a witness' statement was "indisputably false," rather than merely misleading. *Byrd v.*

-21-

*Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).  Mere inconsistencies in witness testimony do not establish the knowing use of false testimony by the prosecutor.  *Coe*, 161 F.3d at 343.  The fact that a witness contradicts himself or another witness or changes his story also does not establish perjury. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).  "A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial."  *Ibid.*

The petitioner has not shown that Brandon Perry committed perjury.  He merely points to inconsistencies between Robert Perry's and Brandon Perry's testimony.  That is insufficient to establish a perjury claim.  *Coe*, 161 F.3d at 343.  More importantly, even if Brandon Perry lied about witnessing the petitioner in the vicinity of the barn, the petitioner's claim must fail because he has not shown that the prosecutor knew that Brandon Perry had testified falsely.  *See Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009).  The petitioner is not entitled to habeas relief on his perjury claim.

The petitioner also contends that the prosecutor committed misconduct by asking the petitioner about his parole status after that information had been ruled inadmissible by the trial court. The Michigan Court of Appeals rejected this claim, finding that any prejudice was alleviated by the trial court's cautionary instruction to the jury.  *People v. Cage*, 2008 WL 681151, at *1.

The prosecutor's brief reference to the petitioner's parole status does not entitle the petitioner to habeas relief for two reasons.  First, the prosecutor asked only one brief question to the petitioner about his parole status and never again mentioned it at trial.  The state courts found that the prosecutor's questioning stemmed from an honest mistake about what the trial judge allowed.  There is no evidence suggesting the contrary is true.  Second, as the state court of appeals observed, the

-22-

trial court gave the jurors a cautionary instruction that they were to disregard the petitioner's parole status and could not consider it as evidence of the petitioner's guilt. A jury is presumed to have followed a trial court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). In this case, the trial court gave a prompt, curative instruction that directly addressed the prosecutor's isolated question concerning the petitioner's parole status. Under the circumstances, the Court cannot find that the conduct rendered the trial fundamentally unfair. *Serra*, 4 F.3d at 1356 (habeas petitioner not entitled to habeas relief based on the prosecutor's isolated mention of petitioner's prior conviction for possession of marijuana, where the trial court gave the jurors "a strong, prompt, curative instruction").

Next, the petitioner contends that the prosecutor improperly vouched for her witnesses during closing argument. A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses because such conduct "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell*, 181 F.3d at 737 (internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Ibid.* Improper vouching occurs when the jury reasonably could believe that the prosecutor was professing a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (citations omitted); *see also Griffin v. Berghuis*, 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004). To merit relief, however, a prosecutor's expression

-23-

of personal belief in a witness's credibility or in a defendant's guilt must be flagrant and not isolated. *See United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir. 2002), *overruled on other grounds by Harris v. United States*, 536 U.S. 545 (2002).

The prosecutor did not vouch for her witnesses during closing arguments. She merely referred to the evidence in the record and asked the jury to draw reasonable inferences. She did not state her personal belief in the credibility of the witnesses or the petitioner's guilt. Moreover, any danger that might have emerged from the argument was blunted by statements from both the prosecutor in her closing argument and the trial judge that the prosecutor's arguments were not evidence in the case. *Byrd*, 209 F.3d at 537-38.

The petitioner next contends that the prosecutor suppressed a 911 tape, DNA evidence, and fingerprint evidence. The Michigan Court of Appeals rejected that claim, finding that the record did not support it. *People v. Cage*, 2008 WL 681151, at *4-5.

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process where the evidence is material either to guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The petitioner has the burden of establishing these elements. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

The state court of appeals's determination that no evidence supported the petitioner's allegations that evidence was suppressed is entitled to the presumption of correctness found in 28

-24-

U.S.C. § 2254(e)(1).  The petitioner may rebut this presumption only with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001).  The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).  Courts apply the presumption of correctness to state court factual findings when adjudicating *Brady* claims.  *Byrd*, 209 F.3d at 503.  The petitioner has not offered any evidence to rebut the Michigan Court of Appeals's factual finding that no exculpatory evidence was withheld from the petitioner.  The petitioner is not entitled to habeas relief on this claim.

The petitioner lastly contends that the prosecutor shifted the burden of proof.  Any argument by the prosecutor that may have shifted the burden of proof did not deprive the petitioner of a fair trial because any possible prejudice that might have resulted from the comment was cured by the trial court's lengthy instructions on the presumption of innocence and the proper burden of proof; the court told the jury in frank terms that the petitioner did not have to prove his innocence.  Trial Tr., Aug. 7, 2006, at 42-45; *see Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002).  The petitioner is not entitled to habeas relief on his claim of prosecutorial misconduct.

### III.

Finally, the petitioner has filed several motions for an evidentiary hearing, two of which are currently pending.  The Court denied an earlier such motion on July 1, 2010.  *See* dkt. # 64.

An evidentiary hearing in a federal habeas case may be warranted if the hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claims.  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

"[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Ibid.* If the record refutes the habeas petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Ibid.* A habeas petitioner is not entitled to an evidentiary hearing on his claims if they plainly lack merit. *See Stanford v. Parker,* 266 F.3d 442, 459-60 (6th Cir. 2001). As discussed above, the petitioner's claims lack merit. That determination readily can be made on the existing record. The petitioner is not entitled to an evidentiary hearing.

IV.

The state court decisions in this case were not contrary to federal law, did not unreasonably apply federal law, or amount to an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the amended petition for a writ of habeas corpus [dkt. #35] is **DENIED**.

It is further **ORDERED** that the motion for evidentiary hearing [dkt. #79] is **DENIED.**

It is further **ORDERED** that the petitioner's motion for summary judgment [dkt. #80] is **DENIED**.

It is further **ORDERED** that the petitioner's motion to remand and for an evidentiary hearing [dkt. #89] is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   August 12, 2011

-26-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 12, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL